IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

DAVID LYNN BARE,  )
          Plaintiff,  )
       )   CIV-13-786-M
v.  )
CAROLYN W. COLVIN,  )
  Acting Commissioner of Social  )
  Security Administration,  )
          Defendant.  )

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his applications for disability insurance and supplemental security income benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff applied for disability benefits in 2008. (TR 134-144). Plaintiff alleged in his applications that he became unable to work beginning September 1, 2008, due to prostate cancer with chronic pain and fatigue, anxiety/depression, hearing loss, loss of use of left

1

hand/arm, fractured left wrist in 2001, incontinence, and auditory hallucinations. (TR 194). Plaintiff described previous work as a delivery driver, shear machine operator, and welder and stated he stopped working on September 20, 2008, due to his impairments. (TR 194-195).

In an administrative hearing conducted before Administrative Law Judge McLean ("ALJ") on July 14, 2011, Plaintiff testified that he was 51 years old, he had an eighth grade education, he received unemployment benefits in 2008, 2009, and the first half of 2010, and he lived with his parents. Plaintiff stated he had difficulty sleeping despite taking sleeping aid medication, he experienced hallucinations for the previous four or five years, he had problems with stress-induced anxiety symptoms such as difficulty breathing, sweating, and chest "pound[ing]," he had trouble getting along with other people, he had trouble remembering to take his medications, and he had previously considered but had not attempted suicide. Plaintiff stated that, additionally, he had problems with acid reflux, his bladder, and hemorrhoids, and he experienced frequent night-time urination, hearing loss, inflammation of the testicles, degenerative disease in his back and joints, leg cramps, dizziness, and difficulty remembering and learning. Plaintiff estimated he could walk 100 yards, occasionally carry a gallon of milk, and sit for 10 minutes. A vocational expert ("VE") also testified at the hearing.

The medical record reflects that Plaintiff underwent surgery for prostate cancer in September 2008. His surgeon, Dr. Motwani, performed a radical retropubic prostatectomy, and by February 2009 Plaintiff reported to the surgeon that he was doing much better. (TR

327, 318). No further treatment by Dr. Motwani is indicated in the record. In August 2009, Plaintiff complained of abdominal/suprapubic pain, for which medications were prescribed by a treating urologist, Dr. Slobodov. (TR 401). In September 2009, Plaintiff was referred to a pain management specialist for his complaint of chronic pelvic pain. (TR 403).

In a consultative physical examination conducted in May 2009, Plaintiff complained of constant throbbing, stabbing pain since his prostate operation, numbness in his arms and legs, and pain and tingling in his legs. (TR 363). Plaintiff stated he was taking the narcotic pain medication Lortab® daily. (TR 363). The examiner, Dr. Maldonado, reported that Plaintiff exhibited no weakness or atrophy, normal cervical and lumbar ranges of motion, no neurological deficits, good grip strength, and normal gait. (TR 363-364).

In a consultative psychological evaluation conducted by Dr. Krimsky in June 2009, Plaintiff stated that he was not working following his prostate operation because the operation "left him in more or less continuous pain." (TR 378). Dr. Krimsky noted Plaintiff "present[ed] himself as a hapless victim," "describe[d] symptoms closely resembling anxiety attacks rather than problems of depression," and "[a]s he puts it, he has reached a point of simply not caring." (TR 378). In mental status testing, Dr. Krimsky noted Plaintiff exhibited weak memory function, less than average verbal ability, and difficulty with abstract thinking. Plaintiff reported he had two friends, that he sometimes worked on repairing a lawnmower, and that he was fired from his last job because of an argument with his boss or supervisor. The diagnostic impression was anxiety and low mood disorders with sub-average verbal ability. (TR 379).

Plaintiff sought treatment for depression at a mental health clinic, Red Rock Behavioral Health Services ("Red Rock"), beginning in October 2010. Plaintiff stated to the interviewer that he occasionally went to movies or to a casino and that he wanted to "feel good and . . . get a decent job." (TR 486). He was living with his parents and relying on them for his basic needs. (TR 492). He reported he had no friends and spent much of his time alone. (TR 492).

Plaintiff was evaluated by a psychiatrist at Red Rock, Dr. Schreiner, in November 2010. Dr. Schreiner noted a diagnostic impression of depressive disorder with a "moderate" global assessment of functioning ("GAF")[1] score. (TR 494-495). Plaintiff reported he was not taking any medications at that time. Dr. Schreiner noted that in a mental status examination Plaintiff appeared neat and clean, his speech was normal, his mood was depressed, his affect was labile, his thought content was intact, he did not report or exhibit hallucinations or delusions, he was cooperative, his sleep was decreased, he was not suicidal or homicidal, his psychomotor activity was normal, and his judgment was average.

The ALJ issued a decision in November 2011. Following the familiar sequential evaluation procedure, the ALJ found at step one that Plaintiff had not worked since his

---

[1]The diagnosis of mental impairments "requires a multiaxial evaluation" in which Axis I "refers to the individual's primary clinical disorders that will be the foci of treatment," Axis II "refers to personality or developmental disorders," Axis III "refers to general medical conditions," Axis IV "refers to psychosocial and environmental problems," and Axis V "refers to the clinician's assessment of an individual's level of functioning, often by using a Global Assessment of Functioning (GAF), which does not include physical limitations." Schwarz v. Barnhart, No. 02-6158, 2003 WL 21662103, at *3 fn. 1 (10th Cir. July 16, 2003)(unpublished op.)(citing the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM IV)(4th ed. 1994), pp. 25-32).

4

alleged disability onset date. At step two, the ALJ found that Plaintiff had severe impairments due to prostate cancer, depression, and anxiety. At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the requirements of a listed impairment in 20 C.F.R. pt. 404, subpt. P, app. 1. In connection with this finding, the ALJ considered the requirements of the listing for affective disorders and found that Plaintiff's mental impairments had resulted in "moderate" limitations in daily living activities, "moderate" limitations in social functioning, and "moderate" limitations in concentration, persistence, or pace. (TR 20).

At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform work at the light exertional level with additional exertional and nonexertional limitations. The ALJ found Plaintiff could occasionally climb, balance, kneel, crouch, crawl, or stoop, he was limited to simple tasks with routine supervision with no public contact or work involving customer service, and he was able to interact with coworkers and supervisors for superficial work purposes and adapt to work situations. (TR 21).

Considering Plaintiff's RFC for work, his vocational characteristics, and the VE's testimony, the ALJ determined that Plaintiff could not perform his previous jobs but could perform other jobs available in the economy, including the jobs of merchandise marker, label coder, and ironer. The ALJ concluded based on these findings that Plaintiff was not disabled within the meaning of the Social Security Act.

The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's

decision is the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

III. Consideration of Probative Evidence

Plaintiff does not challenge the ALJ's decision with respect to Plaintiff's physical impairments. Rather, Plaintiff's arguments focus entirely on the ALJ's and the Appeals Council's evaluation of the evidence concerning Plaintiff's mental impairments.

Plaintiff first contends that the ALJ failed to expressly weigh "the various GAF scores in the record." Plaintiff's Opening Brief, at 10. However, the only GAF scores that are mentioned by Plaintiff are GAF scores that he admits were expressly considered by the ALJ

6

in the decision. Plaintiff also admits that the ALJ stated in the decision that she had considered the GAF scores in the record. Nevertheless, Plaintiff asserts that the ALJ was obligated to expressly weigh each of the GAF scores in the record in determining Plaintiff's mental functioning ability.

Generally, an ALJ must give the opinion of an acceptable treating source controlling weight if it is both well-supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p, 1996 WL 374188, at *2). Where an ALJ finds that a treating physician's opinion is not entitled to controlling weight, the ALJ must decide "whether the opinion should be rejected altogether or assigned some lesser weight." Pisciotta v. Astrue, 500 F.3d 1074, 1077 (10th Cir. 2007).

In an initial assessment of Plaintiff at Red Rock, Ms. Shoffstall, who lists her credentials as "M.S. LMFT CANDIDATE," stated that Plaintiff's current GAF score was 45 and his highest GAF score in the previous year was 45. (TR 488).

The ALJ's decision reflects consideration of this GAF assessment and the GAF assessment of 58-60 ascribed by Dr. Krimsky for Plaintiff's functional ability at the time of the consultative psychological evaluation. The ALJ appropriately recognized in the decision that a "GAF score is a clinician's rating of an individual's overall psychological, social and occupational functioning on a scale of 0 to 100." (TR 23). "A rating of 58-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning." (TR 23)(citing the American Psychiatric Association's Diagnostic and Statistical Manual of

7

Mental Disorders, Fourth Edition, at 34, 2000).

The ALJ next noted Ms. Shoffstall's diagnostic impression appearing in the record, including the GAF score of 45, and reasoned that

> [a]lthough there are several GAF scores in the record, the . . . scores are not intended for forensic purposes, such as assessment of disability, competency, or the individual's control over such behavior (Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, pages xxiii and xxvii). In addition, GAF scores are a snapshot of what the claimant's level of functioning is at that particular time, and is not an indication of overall functioning. While some consideration was given to these scores, the undersigned must rely on evidence that demonstrates the claimant's overall ability to function.

(TR 23).

Plaintiff takes issue with this discussion and argues that the ALJ erred by not giving more consideration to Ms. Shoffstall's assessment of Plaintiff's functioning ability. But Ms. Shoffstall was not a treating physician or even an acceptable medical source. See 20 C.F.R. §§ 404.1513(a), 416.913(a)(describing acceptable medical sources). "In the case of a nonacceptable medical source like [Ms. Shoffstall], the ALJ's decision is sufficient if it permits us to 'follow the adjudicator's reasoning.'" Keyes-Zachary v. Astrue, 695 F.3d 1156, 1164 (10th Cir. 2012)(quoting SSR 06-03p, 2006 WL 2329939, at *6).

Here, it is obvious that the ALJ rejected or gave little weight to Ms. Shoffstall's low GAF assessment. No error occurred here as the GAF score ascribed by Dr. Krimsky was assessed by an acceptable medical source and the lower GAF score ascribed by Ms. Shoffstall was assessed by a nonacceptable medical source. See SSR 06-03p, 2006 WL

8

2329939, at * 5 ("The fact that a medical opinion is from an acceptable medical source is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an acceptable medical source because . . . acceptable medical sources are the most qualified health care professionals.")(internal quotation marks omitted).

The ALJ explained in the decision that she had given "great weight" to Dr. Krimsky's opinion that Plaintiff would be able to return to work with treatment. (TR 24). Although, as Plaintiff points out, Dr. Krimsky's opinion is a bit more nuanced than the ALJ stated in the decision (Dr. Krimsky stated that Plaintiff "needs a good deal of help, emotional and medical and with improvement would probably be able to return to work")(TR 379), the ALJ's decision provides sufficient consideration of the GAF assessments by Ms. Shoffstall and Dr. Krimsky to allow the Court to follow the ALJ's reasoning.

Plaintiff next asserts that the ALJ did not consider probative evidence in the record contained in a "Summary of Clinical Needs" note in Plaintiff's treatment record at Red Rock. This note is included in Ms. Shoffstall's report of her initial assessment of Plaintiff at the clinic in October 2010. The note states only that "Client is very depressed and has frequent crying spells. His wife left him a week ago, and he is dependent on others to meet his basic needs. Client will benefit from case management services and individual rehab [sic] services." (TR 487). Plaintiff also refers to a separate entry by Ms. Shoffstall setting forth an Interpretive Summary of the interview and contends that the ALJ erred by not expressly considering this probative evidence. (TR 492). The only portion of these notes that could be considered probative is Ms. Shoffstall's statement that Plaintiff is "depressed" and "low

9

functioning" but "can benefit from services because he is capable of learning and implementing change." (TR 492).

The ALJ found that Plaintiff had mental impairments and included limitations in the RFC assessment for mental work-related activities. Plaintiff does not suggest how Ms. Shoffstall's statements in either the Summary of Clinical Needs note or the Interpretive Summary note are inconsistent with the mental RFC assessment. Ms. Shoffstall's notes did not include any opinion concerning the severity of Plaintiff's mental impairments that was inconsistent with the ALJ's mental RFC assessment. No error occurred in this respect.

Plaintiff contends that the Appeals Council's consideration of a letter appearing in the record authored by Ms. Burton, a case manager at Red Rock dated December 13, 2011, was inadequate. Plaintiff acknowledges that the Appeals Council was not required to expressly consider the letter but argues that it is reasonably possible that the letter would have changed the outcome of his case if it had been read "in conjunction with the low GAF scores" from Red Rock because it would then provide an indication of ongoing mental limitations. Plaintiff also asserts that Ms. Burton's letter provided an "other source " opinion that should have been weighed using the factors set out in 20 C.F.R. §§ 404.1527(c) and 416.927(c).

The letter to which Plaintiff is referring is addressed to Plaintiff's representative, and in it Ms. Burton stated that Plaintiff had been a client at Red Rock since October 4, 2010, that he was diagnosed with major depressive disorder, recurrent, severe, with psychosis, that he "experiences severe mood swings and feelings of helplessness/hopelessness daily," "audio hallucinations . . . controlled by medication," and "scattered thinking and extreme difficulty

10

concentrating and remembering," and he is "unable to maintain employment due to the severity of his mental illness as well as his physical health problems." (TR 510). Ms. Burton also stated in the letter that Plaintiff would continue to receive "outpaitent services . . . until he meets discharge criteria including: has steady income, can meet basic needs, and utlizes healthy coping skills." (TR 510).

The agency's regulations distinguish between opinions from "acceptable medical sources," who are defined as licensed physicians, psychologists, podiatrists, and qualified speech-language pathologists, and other health care providers who are not "acceptable medical sources." 20 C.F.R. §§ 404.1513(a), (d)(1), 416.913(a), (d)(1).

SSR 06-3p "clarifies how [the Commissioner] consider[s] opinions and other evidence from medical sources who are not 'acceptable medical sources.'" SSR 06-3p, 2006 WL 2329939, at *4. The agency states in the ruling that the clarification is necessary because

> [w]ith the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources ... are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

Id. at *3.

To effectively further this policy, the agency advises that "[a]djudicators generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure

that the discussion of the evidence ... allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." Id. at *6.

Because "all the ALJ's required findings must be supported by substantial evidence," Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999), the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1995). However, Ms. Burton's letter was authored after the ALJ's decision and submitted to the Appeals Council as new evidence. The Appeals Council is not required to follow the same rules as are applied to ALJ's in evaluating new evidence.

The Appeals Council stated in its notice of action dated June 20, 2013, that it had considered the additional evidence submitted by Plaintiff with his administrative appeal and determined it did not provide a basis for changing the ALJ's decision. (TR 1-2). With respect to one piece of additional evidence submitted by Plaintiff, a "prescription order chart dated February 3, 2012," the Appeals Council stated that the evidence was "about a later time" after the ALJ's decision and therefore "does not affect the decision about whether you were disabled beginning on or before November 1, 2011." (TR 2).

The Appeals Council did not reject Ms. Burton's letter because it covered a period after the ALJ's decision. The Appeals Council considered the letter, and it therefore became part of the administrative record. O'Dell v. Shalala, 44 F.3d 855, 859 (10th Cir. 1994)(when Appeals Council considers additional treatment records, the records are new evidence that

12

"becomes part of the administrative record to be considered by the court when evaluating the [Commissioner's] decision for substantial evidence").

But the new evidence does not alter the outcome of Plaintiff's appeal. The ALJ's determination that Plaintiff was not disabled is supported by substantial evidence in the record, including the report of the consultative psychological examiner who found that Plaintiff could probably return to work with treatment, the report of the consultative physical examiner who found that Plaintiff did not exhibit significant physical limitations, and the absence of any opinion by a treating or examining physician that Plaintiff was disabled by mental and/or physical limitations. Moreover, as the ALJ reasoned, Plaintiff described a myriad of daily activities and received unemployment benefits for a significant period of time after he alleged he was disabled. (TR 22). See Lately v. Colvin, __Fed.App'x. __, 2014 WL 1227632, * 3 (10th Cir. 2014)(noting that social security disability claimant's "collection of unemployment benefits . . . required her to attest that she was ready, willing, and able to work"). The statements of Ms. Burton, a nonacceptable medical source, that Plaintiff experienced severe depression and hallucination symptoms that interfered with his daily functioning was not consistent with his treatment records, which reflected he did not exhibit or describe hallucinations or delusions (TR 494) and the statements were not supported by Plaintiff's mental health treatment records, which covered only a brief period in October and November 2011. See Pisciotta v. Astrue, 500 F.3d 1074, 1078 (10th Cir. 2007)("Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence."). Additionally, Ms. Burton's statement that Plaintiff "is unable to maintain

13

employment due to the severity of his mental illness as well as his physical health problems" is not probative evidence that should have been expressly considered by the Appeals Council because the issue of disability is one that is "reserved to the Commissioner" and "never entitled to controlling weight or special significance." SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996). See 20 C.F.R. § 404.1527(e), 416.927(e). Plaintiff does not allege how the ALJ's mental RFC assessment was inconsistent with Ms. Burton's statements in her letter that Plaintiff had difficulty concentrating and remembering, a statement that appears to coincide with the RFC limitations to "simple tasks with routine supervision." (TR 21). The letter did not include any information concerning Plaintiff's medications other than to note that Plaintiff's hallucinations were "controlled by medication," a statement that also does not conflict with the ALJ's RFC assessment. See Jimison ex rel. Sims v. Colvin, 513 Fed.App'x. 789, 793 (10th Cir. 2013)(unpublished op.)("an impairment is not disabling when medications adequately control it without significant side effects")(citing Dixon v. Heckler, 811 F.2d 506, 508 (10th Cir. 1987)); Moua v. Colvin, 541 Fed.App'x. 794, 800 (10th Cir. 2013)(unpublished op.)(same).

The ALJ's step five determination is supported by the VE's testimony concerning the availability of jobs for an individual with Plaintiff's RFC for work and vocational characteristics. For these reasons, the Commissioner's decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits.

The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before         July 15th, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this    25th    day of    June   , 2014.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE